**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SPRINGFIELD FINANCE & MORTGAGE COMPANY, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA ANN LILLEY, TRUE BLUE VENTURES, LTD., a Bahamian Company, and JOHN DOE DEFENDANTS I-X<br><br>Defendant. | MEMORANDUM AND ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [ECF No. 6]<br><br>Case No. 2:14-cv-00679-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Barbara Ann Lilley moves this Court to dismiss Springfield Finance & Mortgage Company, LLC's Complaint, (ECF No. 2-1), pursuant to Rule 12(b)(2) for want to personal jurisdiction.[1] (Mot. Dismiss; ECF No. 6.) Springfield Finance & Mortgage Company, LLC has not served True Blue Ventures, Ltd., ("True Blue"). Springfield Finance & Mortgage Company, LLC —which asserts it has obtained ARDCO Leasing & Investment's ("ARDCO's") interest in this lawsuit—alleges Ms. Lilley and True Blue fraudulently and/or negligently induced Springfield Finance & Mortgage Company, LLC and ARDCO (collectively "Springfield") to contribute $100,000 to sham investments. (Compl. ¶¶ 2, 57-66, ECF No. 2-1.)

The Court has read the Motion and Memoranda submitted by both parties.[2] Ms. Lilley's repeated interaction with Utah residents for purposes of obtaining their investments rise to the level of the "minimum contacts," and the exercise of personal jurisdiction by this Court does not

[1] The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). (ECF No. 13.)

[2] The Court determined it can decide the Motion based on the briefing and does not need oral argument. *See* DUCivR 7-1(f).

offend "traditional notions of fair play and substantial justice"; therefore, the Court DENIES the Motion.

## I. Factual Background

Springfield asserts it is "domiciled in the State of Utah, with principle places of business in Utah. Every issue of law and fact herein is wholly between citizens of Utah and other jurisdictions outside of Utah." (Compl. ¶ 7, ECF No. 2-1.) Springfield goes on to allege personal jurisdiction over Ms. Lilley pursuant to Utah's long-arm statute because:

> a. Defendants or representatives and/or agents of the Defendants have transacted business in this state by making multiple telephone calls to Utah, including calls during which the negotiations regarding the investment, which is the subject matter of this lawsuit, were made to agents of SFMC or ARDCO.
>
> b. Defendants or representatives and/or agents of the Defendants have sent and received letters and/or emails from agents and representatives of SFMC and ARDCO in Utah concerning issues involved this in [sic] lawsuit.
>
> c. Defendants or representatives and/or agents of the Defendants communicated with and/or tortuously [sic] injured the Plaintiffs and breached its agreement with representatives of SFMC and ARDCO in Utah.
>
> d. Defendants or representatives of the Defendants received money, and SFMC and ARDCO sent money from agent banks - branches of which are located in Salt Lake County, State of Utah.

(Compl. ¶ 8, ECF No. 2-1.) Throughout the Complaint, Springfield discusses specific instances of contact with Ms. Lilley. (*Id.* ¶¶ 18-19 ("Mr. Badger telephoned Lilley", "Lilley discussed with Mr. Badger"), ¶¶ 23-25 ("Lilley continued to tout to Mr. Badger", "Lilley represented to Mr. Badger", "was represented by Lilley to Mr. Badger"), ¶¶ 26-27 ("Lilley also requested the same personally via email", "wired as directed by Lilley"), ¶¶ 33, 36 ("Lilley represented to Mr. Badger", "Lilley emailed Mr. Badger"), ¶¶ 37, 39 ("Lilley provided Mr. Badger with a written sheet", "Lilley represented to Mr. Badger"), ¶¶ 40-44 ("Lilley continued to tout", "Lilley prepared and forwarded an email", "David Badger telephoned Lilley", "Lilley telephoned Mr.

Badger", "an email from Lilley to investors"), ¶¶ 45-51 ("Lilley via email", "Mr. Badger telephoned Lilley", "Lilley emailed David Badger", "Lilley stated in a telephone conversation", "in a telephone conversation between Lilley and Mr. Badger" repeated three times), ¶ 52 ("Mr. Badger telephoned Lilley").

Springfield alleges Ms. Lilley acted "individually and as a representative of True Blue and Assured Capital." (*Id.* ¶ 59.) Springfield alleges it had a contract with Ms. Lilley and True Blue. (*Id.* ¶ 128.) Springfield submits an affidavit from Mr. Badger in support of its opposition that swears, "Lilley made a series of phone calls and e-mails to [Mr. Badger], in Utah." (Aff. of Badger ¶ 2, ECF No. 8-1.) Mr. Badger further swears Ms. Lilley knew Springfield operated out of Utah and directed him to send money from Utah. (*Id.* ¶¶ 3-4.)

## II. LEGAL STANDARD

"'The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.'" *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)). Because neither the Complaint's allegations nor Mr. Badger's Affidavit contradict Ms. Lilley's Affidavit, the Court accepts the Complaint's allegations as true. *Behagen*, 744 F.2d at 733; *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted) (stating court takes as true all "plausible, non-conclusory, and non-speculative" facts and resolves factual disputes in favor of the plaintiff).

To decide whether it has personal jurisdiction over a defendant, a court must determine "'(1) whether the applicable statute potentially confers jurisdiction by authorizing service of

process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). Because this case comes to federal court through diversity jurisdiction and the state causes of action do not provide for nationwide service of process, Federal Rule of Civil Procedure 4(k)(1)(A) directs the Court to consult Utah's long-arm statute. *See Dudnikov*, 514 F.3d at 1070 (noting where federal statutes at issue do not provide nationwide service of process, the court considers the law of the forum state). Utah's long-arm statute identifies the following acts as subjecting a person to jurisdiction in Utah—transacting business or contracting to supply services or causing tortious injury in the state. Springfield's Complaint along with its affidavit sufficiently alleges all of these acts with respect to Ms. Lilley. The statute further confers the maximum jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78B-3-201(3). Because Utah's statute confers jurisdiction coextensive with the United States Constitution, the first inquiry "effectively collapses into the second, constitutional, analysis." See *Dudnikov*, 514 F.3d at 1070 (analyzing Colorado's statute containing similar language).

The Due Process Clause permits assertion of personal jurisdiction only when the defendant has sufficient "'minimum contacts'" with the state, so that the exercise of jurisdiction would "not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985)

(quotation marks and citation omitted). If a court finds it has either specific or general jurisdiction over a defendant, the case satisfies the "minimum contacts" standard. A court may assert specific jurisdiction over a defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472 (quotations omitted). A court may assert general jurisdiction over a defendant "based on the defendant's general business contacts with the forum state." *OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Helicopteros*, 466 U.S. at 415).

In this case, Springfield concedes the Court could not maintain general personal jurisdiction over Ms. Lilley. (Opp'n 4, ECF No. 8.) Accordingly, the Court reviews Ms. Lilley's contacts with Utah to determine whether the exercise of specific personal jurisdiction over Ms. Lilley offends due process. *See OMI Holdings* ,149 F.3d at 1091.

The specific jurisdiction inquiry has two stages. First, the Court determines "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *Id.* (*quoting World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1979)). The test to determine whether the defendant has established such minimum contacts has two subparts. First, the court considers whether the defendant "purposefully directed his activities at residents of the forum." *Burger King,* 471 U.S. at 472. Next, the court considers "whether the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *OMI Holdings,* 149 F.3d at 1091 (emphasis in original) (*quoting Asahi Metal Indus. Co. v. Super. Ct.,* 480 U.S. 102, 109 (1987)).

If the defendant's actions create sufficient minimum contacts, the court moves onto the second stage of the specific jurisdiction inquiry and considers "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings*, 149 F.3d at 1091.

The Tenth Circuit cites approvingly *Ticketmaster-New York, Inc. v. Alioto*, which describes the interplay between the two stages of the personal jurisdiction analysis:

> We think ... that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*OMI Holdings*, 149 F.3d at 1091 (brackets in original) (*quoting Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

## III. SPECIFIC PERSONAL JURISDICTION

### A. Minimum Contacts

#### *1. Purposeful Availment*

Ms. Lilley argues that Springfield sought her out and that she made no purposeful availment of the benefits of conducting business in Utah. (Mot. Dismiss 6, ECF No. 6.) Purposeful availment requires showing the defendant "create[d] a substantial connection with the forum State." *Asahi,* 480 U.S. at 109. "[T]he relationship must arise out of contacts that the 'defendant *himself'* creates with the forum State." *Walden v. Fiore*, 571 U.S. --, 134 S.Ct. 1115, 1122 (2014). The analysis considers both the quality and the quantity of contacts. *OMI Holdings*, 149 F.3d at 1092. "[S]olicitation is some evidence suggesting purposeful availment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995) (*citing Burger King*, 471 U.S. at 473).

Certainly the Complaint alleges that Springfield reached out from Utah to Ms. Lilley to inquire about investment opportunities. (Compl. ¶ 18, ECF No. 2-1.) And Springfield's unilateral decision to reach out to Ms. Lilley cannot manufacture this Court's personal jurisdiction, as "[t]he fact that [Springfield] happened to be a resident of Utah was of no consequence to" Ms. Lilley. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (citation and quotation marks omitted). However, following the initial contact, Ms. Lilley made numerous efforts to solicit and keep investment from Utah.

Ms. Lilley argues that the Court lacks personal jurisdiction over her in part because she acted as an agent/officer of an incorporated entity, True Blue, not on her own behalf. (Mot. Dismiss 5, ECF No. 6.) While courts do not have jurisdiction over all officers of a corporation based solely on the acts of the corporation, they may have jurisdiction based on the officers' individual contacts with the forum state. *Rusakiewicz v. Lowe,* 556 F.3d 1095, 1102 (10th Cir. 2009) (citing *Ten Mile Indus. Park v. W. Plains Servs. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987)). Thus, the Court looks to the contacts Ms. Lilley had with Utah as alleged in the Complaint.

According to the Complaint and Mr. Badger's affidavit, Ms. Lilley knowingly contacted Springfield in Utah with information about her investment opportunities—the two that failed and others, how to transfer money from Utah into those opportunities, forms and agreements surrounding the investments, when and how she would send money to Utah. ((Aff. of Badger ¶¶ 2-4, ECF No. 8-1; Compl. ¶¶ 19-21, 23, 26-27, 33, 36-41,43-45, 47-51, 53, ECF No. 2-1.) Ms. Lilley engaged in these communications through telephone, e-mail, and mail between September 2009 and December 2010. (Compl. ¶¶ 8, 18, 66, ECF No. 2-1.) She knew that if she did not return the money to Springfield, Springfield would bear the brunt of that harm in Utah. (Aff. of

Badger ¶¶ 3, 5, ECF No. 8-1.) While Ms. Lilley may not have initially sought out investment from Utah, once these Utahans contacted her she sought to turn them into clients, solicit their money for multiple investments, and keep them calm when their investments did not pay out on schedule. She took all these actions knowing Springfield based in Utah, the money came from Utah, and the money would return (or not) to Utah.

These facts contrast with those in *Walden*. In *Walden*, all of the contacts by the defendant with the plaintiff occurred outside of the forum state. 134 S.Ct. at 1126. Under the facts of this case, the Court finds purposeful availment.

***2. Arising Out Of***

In the second subpart of the minimum contacts test, the Court must determine whether a nexus exists between Ms. Lilley's forum-related contacts and Springfield's causes of action. Ms. Lilley does not contest that the alleged contacts substantially relate to the damages allegedly incurred by Springfield. Indeed, Springfield alleges Ms. Lilley's contacts induced it to invest money with her and not seek its return. Thus, the Court concludes Springfield's claim arises out of the actions alleged to create the connection with the forum. *See OMI Holdings,*149 F.3d at 1091 (explaining standard). Therefore, the Court finds Ms. Lilley has minimum contacts with Utah, such that she could anticipate Springfield suing her in Utah.

**B. Fair Play and Substantial Justice**

The Court next "consider[s] the quality of those minimum contacts in light of several factors to determine whether the district court's exercise of personal jurisdiction over Defendants violates notions of 'fair play and substantial justice.'" *Id.* at 1095 (*quoting Burger King,* 471 U.S. at 476). Ms. Lilley argues that even if the Court finds minimum contacts, those contacts do not rise above the de minimis. To determine whether the exercise of jurisdiction violates

traditional notions of "fair play and substantial justice," the Court considers: (1) "the burden on the defendant," (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113.

The burden on Ms. Lilley of litigating this case in Utah "is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings*, 149 F.3d at 1096 (*citing World–Wide Volkswagen*, 444 U.S. at 292). This factor helps protect defendants from the inconvenience and expense of litigation in distant venues. *See id.* Ms. Lilley resides in Florida and proposes the Court transfer the case to Florida. (Mot. Dismiss i-ii, ECF No. 6.) Springfield does not allege Ms. Lilley has ever visited Utah. Springfield concedes this factor weighs against an exercise of jurisdiction. (Opp'n 8, ECF No. 8.)

*Asahi*'s second reasonableness factor requires the Court to consider Utah's interest in adjudicating the dispute. *See Asahi*, 480 U.S. at 113. "A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. Because Ms. Lilley allegedly caused Springfield significant damage, Utah has an interest in providing its residents a convenient venue to litigate its claim. This factor weighs in favor of jurisdiction.

In the third step, the Court considers Springfield's interest in convenient and effective relief. *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009). This inquiry "hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *OMI Holdings*, 149 F.3d at 1097. This factor carries the greatest weight in cases where the alternative forum's laws and burdens greatly diminish the plaintiff's chances of recovery. *Id.* Springfield

has not indicated any concern about receiving full redress in Florida's courts. Nevertheless, Springfield has its base in Utah, and litigating in Florida would present the same inconveniences to Springfield that litigating in Utah presents to Ms. Lilley. Thus this factor weighs in favor of jurisdiction. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114.

The fourth factor examines whether Utah provides the most efficient place to litigate Springfield's claim. See *Asahi*, 480 U.S. at 113. This factor has four considerations:

> Key to this inquiry are the location of witnesses, e.g. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996), where the wrong underlying the lawsuit occurred, e.g. *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992), what forum's substantive law governs the case, *e.g. FDIC v. British–American Ins. Co., Ltd.*, 828 F.2d 1439, 1444 (9th Cir. 1987), and whether jurisdiction is necessary to prevent piecemeal litigation. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 850–51 (11th Cir. 1988).

*OMI Holdings, Inc.*, 149 F.3d at 1097. The witnesses in this case live in Canada, Utah, Florida, and the Bahamas. (Compl. ¶¶ 3, 10-12, 16-17, 38, ECF No. 2-1.) Nothing indicates that a majority reside in any one venue. The money went from Utah to Chicago and/or the Bahamas. (*Id.* ¶¶ 27, 38.) The representations took place over the phone, e-mail, and mail; thus, they occurred in multiple places. Springfield invokes Utah law, and Ms. Lilley appears to agree. (Compl. ¶ 87-92, ECF No. 2-2; 12(b)(6) Mot. Dismiss 5-9, ECF No. 5.) No one has asserted a risk of piecemeal litigation. Because some witnesses reside in Utah, communications came to and from Utah, and Utah law applies, this factor weighs in favor of jurisdiction.

*Asahi's* final reasonableness factor requires the Court to analyze "the shared interest of the several states in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113. Because the alternative venue for the resolution of the dispute between Springfield and Ms.

Lilley is Florida, the Court must evaluate Florida's interest in resolving the dispute relative to Utah's position. Neither party articulates Florida's interest in this action. The case does involve a Florida resident, but beyond that the Court cannot conceive of any particular interest Florida might have, particularly since the parties agree Utah law applies. Thus this factor weighs in favor of jurisdiction. Considering all of these factors, the Court finds that its exercise of jurisdiction over Ms. Lilley will not offend traditional notions of fair play and substantial justice.

**IV. Conclusion**

Springfield made a prima facie showing that the Court can fairly exercise specific personal jurisdiction over Ms. Lilley. The Court finds Springfield has alleged Ms. Lilley directed multiple contacts at Utah for her own benefit and that the reasonableness factors tilt toward jurisdiction in Utah. Because the imposition of jurisdiction accords with traditional notions of fair play and substantial justice, the court DENIES Ms. Lilley's Motion to Dismiss.

DATED this 25th Day of September 2015.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge