IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SPRINGFIELD FINANCE & MORTGAGE COMPANY, LLC, a Utah Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA ANN LILLEY and John Doe Defendants 1 through 10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 19)**<br><br><br>Case No.  2:14-cv-00679-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

Defendant Barbara Ann Lilley ("Ms. Lilley") moves the Court[1] for an order dismissing Plaintiff Springfield Finance & Mortgage Company's (collectively, with its parent company ARDCO, "Springfield") First Amended Complaint under Rule 12(b)(6) for failure to state a claim.  (Mot. to Dismiss First Am. Compl. ("Mot."), ECF No. 19.)  Having considered the briefing on the motion,[2] the Court GRANTS Ms. Lilley's motion without prejudice with respect to the alter ego claim and DENIES Ms. Lilley's motion with respect to the remaining causes of action.

---

[1] The parties jointly consented to this Court's determination of the case under 28 U.S.C. § 636(c).  (ECF No. 13.)
[2] Pursuant to DUCiv R 7-1(f), the Court finds oral argument unnecessary and makes its decision on the basis of the record and the parties' memoranda.

# I. INTRODUCTION

In its First Amended Complaint, Springfield pleads six claims for relief against Ms. Lilley:  breach of fiduciary duty; unjust enrichment; accounting; breach of contract; alter ego; and punitive damages.  (1st Am. Compl. ¶¶ 66–105, ECF No. 18.)

After due consideration of the parties' memoranda and pleadings, the Court GRANTS Ms. Lilley's motion without prejudice as to the alter ego claim because Springfield does not state a plausible claim for alter ego liability.  Because Springfield states plausible claims for breach of fiduciary duty, unjust enrichment, accounting, breach of contract, and punitive damages, the Court DENIES Ms. Lilley's motion with respect to those causes of action.

# II. DISCUSSION

In deciding a Rule 12(b)(6) motion, courts must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A.  Necessary and Indispensable Parties

Ms. Lilley asserts True Blue Ventures and Assured Capital, and possibly DAH Management, Jenifer Hoffman, and other absent investors, are necessary and indispensable parties to this litigation.  (*See* Mot. 6–8, ECF No. 19.)

Case 2:14-cv-00679-EJF   Document 30   Filed 08/12/16   Page 3 of 13

Courts apply a three-step process in deciding whether to require joinder of an absent party under Rule 19. "First, the court must determine whether the absent person is 'necessary.'"[3] *Citizen Potawatomi Nation v. Norton,* 248 F.3d 993, 997 (10th Cir. 2001). "If the absent person is necessary, the court must then determine whether joinder is 'feasible.'" *Id.* "Finally, if joinder is not feasible, the court must decide whether the absent person is 'indispensable.'" *Id.* The movant bears the burden of demonstrating the necessity or the indispensability of the absent party. *See Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) (holding that "[the movants] bear the burden of demonstrating that the [absent party] has an interest relating to [non-movants'] … claim and that the [absent party's] ability to protect that interest will be impaired or impeded by the disposition of the suit in its absence"); *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996) (holding that under Rule 19 "[t]he moving party has the burden of persuasion in arguing for dismissal" (quoting *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990))). Generally, courts should apply Rule 19 in a practical, pragmatic, and equitable manner. *Rishell*, 94 F.3d at 1411.

The Court must require joinder of an absent party if:

(A)  in that person's absence, the court cannot accord complete relief among existing parties; or

(B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

     (i)  as a practical matter impair or impede the person's ability to protect the interest; or

---

[3] "The language of Rule 19(a), since the 2007 amendments to the Federal Rules of Civil Procedure, is cast in terms of 'required' parties." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 n.3 (10th Cir. 2012). The 2007 changes were "intended to be stylistic only." Fed. R. Civ. P. 19, advisory committee's note to 2007 amendment.

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Ms. Lilley fails to cite any case law in support of her position that the Court cannot accord complete relief among Springfield and Ms. Lilley or that Ms. Lilley cannot account for any funds she allegedly received from True Blue and/or Assured Capital in the absence of these parties. Utah law clearly allows apportionment of fault to nonparties. *See Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 47, 345 P.3d 619, 629; Utah Code § 78B–5–821(4) (explaining process for allocating fault to a nonparty). As far as contractual liability, the contract governs and either Springfield will be able to prove Ms. Lilley owes it damages or it will not. This Court has subpoena power, and Ms. Lilley can attempt to add any party if she thinks she has a related claim. At this stage in the litigation and on this briefing, Ms. Lilley has not shown that the Court cannot accord the relief due between these parties. Similarly, Ms. Lilley has not shown that a non-party claims an interest in this litigation that it cannot protect or that will cause Ms. Lilley to suffer inconsistent obligations. That Ms. Lilley may not have enough money to pay various people to whom she owes money does not equate with the inconsistent obligations contemplated by the rule. *See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."); *Begay v. Pub. Serv. Co.*, 710 F. Supp. 2d 1161, 1183–84 (D.N.M. 2010) ("While the Tenth Circuit has not devoted extended discussion to inconsistent obligations, it has given, as an example of inconsistent obligations, a hypothetical scenario in which a federal district court orders a defendant to transfer stock to the plaintiff while a state court orders the same defendant to transfer the same stock to a different

party who is not involved in the federal litigation.") (citing *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1098 (10th Cir. 2003)).  The Court concludes that Ms. Lilley has not shown that the absence of these parties requires dismissal.

### B.  Plausibility

#### 1.  Breach of Fiduciary Duty

Ms. Lilley argues that Springfield failed to state a plausible claim for breach of fiduciary duty because Springfield has not alleged facts sufficient to establish a special relationship between Springfield and Ms. Lilley.  (Mot. 2–3, ECF No. 19.)  Utah courts have recognized two types of fiduciary relationships:  (1) those specifically created by contract or formal legal proceedings and (2) "[t]hose implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *See First Sec. Bank v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990) (quoting *Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982)).  As the Court noted in its Order on Ms. Lilley's prior motion to dismiss, the parties agree that the fiduciary relationship here, if any, falls into the second category.  (Order 8, ECF No. 17.)  A fiduciary relationship arises when one party relies on the skill and integrity of another in the absence of a specific contractual duty.  *See First Sec. Bank*, 786 P.2d at 1333.  Generally, "there must exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other."  *Id.* (quoting *Yuster v. Keefe*, 90 N.E. 920, 922 (Ind. App. 1910)).  No fiduciary relationship arises when the parties conduct "arm's length" or adversarial transactions.  *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1064 (Utah 1996).

In dismissing Springfield's claim for breach of fiduciary duty in the original Complaint, the Court noted that "Springfield makes no allegations that it depended on Ms. Lilley's superior expertise in the field, that Ms. Lilley had knowledge of material facts inaccessible to Springfield through reasonable diligence, or that the parties did not enter into an 'arm's length' transaction." (Order 9, ECF No. 17; *see First Sec. Bank,* 786 P.2d at 1334; *Gold Standard*, 915 P.2d at 1064.)

In its Amended Complaint, Springfield includes further allegations as to how Ms. Lilley breached her fiduciary duty:

> 69. [Ms.] Lilley represented that she was an experienced investor, that she had insider knowledge of investment opportunities that were available to the Plaintiffs only through her, and that as a result of her position with True Blue and her relationships with the Investment Opportunities she could guaranty exceptional and safe returns to people who invested through her.

> 70. The Plaintiffs relied on Ms. Lilley's representations and purported expertise in the field of overseas investments.

(1st Am. Compl. ¶¶ 69–70, ECF No. 18.)  The Amended Complaint also includes allegations that Ms. Lilley personally vouched for the integrity of Ms. Hoffman, the alleged principal in Assured Capital and DAH Management, (*id.* at ¶¶ 23, 58, 59, ECF No. 18); True Blue served as a vehicle for Ms. Lilley's investment strategies, and Ms. Lilley represented herself as True Blue's managing director, (*id.* at ¶ 33, ECF No. 18); and Ms. Lilley represented that the True Blue investment opportunity was "shutting its doors to any and all new submission [sic]," (*id.* at ¶¶ 35, 59, ECF No. 18).

Taken together, these allegations raise a plausible inference of an implied-in-law fiduciary relationship between the parties.  According to Springfield, Ms. Lilley represented that she had experience in overseas investments and had insider knowledge of lucrative investment opportunities at Assured Capital and True Blue.  Springfield further alleges it relied on Ms. Lilley's representation of expertise and access to investment opportunities that were otherwise

unavailable.  Springfield alleges it depended upon Ms. Lilley's superior business experience and intelligence in overseas investments, putting its trust and confidence in Ms. Lilley's recommendations with the mutual understanding that Ms. Lilley would shepherd Springfield's investment to high returns.  (*See, e.g.*, *id.* at ¶¶ 57–59, 69–70, ECF No. 18.)

Accepting Springfield's additional factual allegations as true, the Amended Complaint nudges Springfield's claim for breach of fiduciary duty "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### 2.  Unjust Enrichment

Ms. Lilley argues for dismissal of Springfield's unjust enrichment claim because she claims Springfield fails to allege that Ms. Lilley personally received any money from Springfield.  (Mot. 8, ECF No. 19.)  To allege an unjust enrichment claim, the plaintiff must allege three elements:  (1) a benefit conferred on one person by another; (2) the conferee has knowledge of the benefit; and (3) retention by the conferee of the benefit under circumstances that make retention of the benefit without payment inequitable.  *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (citing *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984)), modified on other grounds by *State v. Levin*, 2006 UT 50, ¶ 13, 144 P.3d 1096.  The benefit to the defendant need not come directly from the plaintiff, as long as the benefit is "not so far removed" from the plaintiff's actions.  *See Desert Miriah*, 2000 UT 83, ¶ 14 (noting that without the conferor's loan, the conferee would never have realized a benefit).

As the Court found in its prior Order, Springfield alleges that Ms. Lilley "siphoned" its investment funds and converted the funds for personal use and gain.  (Order 10, ECF No. 17; 1st Am. Compl. ¶¶ 79, 93, 102, ECF No. 18.)  Even though Ms. Lilley did not receive the funds directly from Springfield, she could only siphon the funds and incur a personal benefit because

Springfield made the investments.  A fact finder could plausibly conclude that Ms. Lilley's siphoning of funds after promising returns on the investments qualifies as inequitable.  Hence, Springfield has stated enough to make a plausible claim for unjust enrichment.

### 3.  Accounting

Ms. Lilley also argues that the accounting claim fails because it only arises if the fiduciary duty claim survives and because Springfield fails to allege that Ms. Lilley had control over or a managerial role in Assured Capital.  (Mot. 8–9, ECF No. 19.)  An action for an accounting simply seeks "to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant."  *Failor v. MegaDyne Med. Prods., Inc.*, 2009 UT App 179, ¶ 13, 213 P.3d 899 (internal quotation marks omitted) (quoting Black's Law Dictionary 19 (7th ed. 1999)).  Ms. Lilley's argument continues to suffer from two problems.  (*See* Order 10, ECF No. 17.)  First, Ms. Lilley offers no legal support to suggest that a fiduciary relationship must exist prior to stating a valid accounting claim.  If an accounting action simply seeks to compel a defendant to repay money owed to the plaintiff, as *Failor* states, a fiduciary relationship does not appear necessary.  Second, the Complaint plausibly alleges that Ms. Lilley personally benefitted from Springfield's investments, through either commission or siphoning, even if she did not directly receive the funds from Springfield or control Assured Capital's investment activities.  (1st Am. Compl. ¶¶ 29, 79, 93, 102, ECF No. 18.)  Therefore, the Court holds that Springfield has stated a plausible claim for accounting.

### 4.  Breach of Contract

Ms. Lilley seeks dismissal of the contract claim because she asserts the Amended Complaint fails to allege a contract between Springfield and herself, and instead pleads contracts against nonparty True Blue.  (Mot. 3–4, ECF No. 19.)  Under Utah law, to state a claim for

breach of contract, the plaintiff must allege:  (1) the existence of a contract; (2) performance by

the plaintiff; (3) breach of the contract by the defendant; and (4) damages.  *Am. W. Bank*

*Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224.

As the Court noted in its prior Order, a plaintiff must allege when the parties entered into

the contract, the essential terms of the contract, and the nature of the defendant's breach.  (Order

11, ECF No. 17; *see Am. W. Bank*, 2014 UT 49, ¶ 18.)  In its Amended Complaint, Springfield

included further allegations that meet this standard.  The Amended Complaint alleges Ms. Lilley

entered into two contracts with Springfield, (1st Am. Compl. ¶¶ 88, 91, 92, ECF No. 18), when

Springfield entered into the alleged contracts, (*id.*), the essential terms of the alleged contracts,

(*id.* ¶¶ 89–91), and the nature of Ms. Lilley's breach, (*id.* ¶¶ 93–94).  Therefore, the Court holds

that Springfield's allegations sufficiently state a plausible claim for breach of contract.

### 5.  Alter Ego Liability

Ms. Lilley urges the Court to dismiss Springfield's claim for alter ego liability because it

is a theory of liability, not an independent cause of action.  (Mot. 5, ECF No. 19.)  Additionally,

Ms. Lilley argues that Springfield fails to plead alter ego plausibly and that Springfield

improperly pleads the theory against absent nonparties.  (*Id.* at 5–6, ECF No. 19.)  Springfield

concedes that alter ego liability does not constitute an independent cause of action but maintains

it as a theory of liability under which the Court could hold Ms. Lilley responsible.  (Mem. Opp'n

Mot. to Dismiss Under Rule 12(b)(6) ("Opp'n") 7, ECF No. 23.)

The Court's prior Order examined the sufficiency of Springfield's claims against Ms.

Lilley under Springfield's allegations of individual and agency liability, noting that alter ego

allegations were not necessary to analyze Springfield's remaining claims.  (Order 7–8, ECF No.

17; *see* 1st Am. Compl. ¶¶ 52, 58, 63, 67, 100; *Armed Forces Ins. Exch. v. Harrison*, 2003 UT

14, ¶ 20, 70 P.3d 35 (explaining an agent that attempts to cloak herself in the corporate veil would both fail to exculpate herself and inculpate her principal) (quoting *Mecham v. Benson*, 590 P.2d 304, 308 (Utah 1979)); *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶¶ 34–48, 147 P.3d 515 (holding, despite absence of veil piercing, sole owner of an LLC personally liable for breach of fiduciary duties because he personally participated in the LLC's breach of such duties)), modified on other grounds by *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 20, 284 P.3d 630.

Springfield agrees that alter ego liability does not constitute an independent cause of action.  (Opp'n 7, ECF No. 23; *see Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968 ("An alter ego claim 'is not itself a claim for substantive relief . . . but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.'" (quoting *Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*, 120 Cal. Rptr. 3d 303, 310 (Cal. Ct. App. 2011)).)  However, because the alter ego doctrine provides a theory of relief under which an individual may have liability for corporate wrongdoing, the Court reviews Springfield's allegations of alter ego liability to determine their plausibility.  *See Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1203 (D. Colo. 2015) (determining plausibility of alter ego claim); *Cole v. Salt Creek, Inc.*, No. 2:08-cv-928-TC-DN, 2010 WL 3075481, at *2 (D. Utah Aug. 5, 2010) (unpublished) (same); 1st Am. Compl. ¶¶ 97–100 (alter ego allegations), ECF No. 18.

A court may disregard a corporate entity under the alter ego doctrine if:  (1) a unity of interest and ownership exists such that the separate personalities of the entities no longer survive; "and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."  *Lowry*, 2012 UT 39, ¶ 14 (quoting

*Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)).  In determining whether the alter ego

doctrine applies, Utah courts consider the following non-exclusive factors:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate
> formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the
> dominant stockholder; (5) nonfunctioning of other officers or directors; (6)
> absence of corporate records; (7) the use of the corporation as a façade for
> operations of the dominant stockholder or stockholders; and (8) the use of the
> corporate entity in promoting injustice or fraud.

*Id.* at ¶¶ 16, 21 (quoting *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)).  While

these factors act as "useful considerations," courts must determine each alter ego case "based on

its individual facts by evaluating the entire relationship between the corporation and its

shareholders."  *Id.* at ¶ 18.

On this record, Springfield's allegations fall short of plausible because they do not go

beyond the "formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at

555.  In its Amended Complaint, Springfield alleges (1) Ms. Lilley used True Blue for purposes

of misappropriating funds; (2) Ms. Lilley and True Blue share a unity of interest and ownership

such that they do not constitute separate entities; and (3) observance of the corporate form would

promote injustice and an inequitable result.  (1st Am. Compl. ¶¶ 97–99, ECF No. 18.)

Springfield further alleges Ms. Lilley used True Blue as a "vehicle to deposit funds for use in

[Ms.] Lilley's investment strategies" and that Ms. Lilley served as True Blue's managing

director.  (*Id.* ¶ 33, ECF No. 18.)  These allegations support the alter ego elements, but the

Amended Complaint lacks the "further factual enhancement" necessary to state a plausible

theory of alter ego liability.  *See Twombly*, 550 U.S. at 557.  For instance, Springfield does not

plead factual allegations suggesting True Blue is a one-man corporation or is undercapitalized; or

that Ms. Lilley failed to observe corporate formalities; or that True Blue lacked functioning

officers or directors; or that True Blue did not maintain corporate records.  *Compare Cole*, 2010

WL 3075481, at *3 (finding plaintiffs alleged many specific activities suggesting alter ego liability, including that defendants' substituted each other's names on paychecks, failed to distinguish between debts, assets, and obligations, guaranteed each other's debts without consideration, were undercapitalized, lacked functioning officers or directors, and shifted assets to protect from adverse judgment).

The Amended Complaint and briefing even tend to suggest that Ms. Lilley lied about True Blue's existence, and it may just be a sole proprietorship.  (1st Am. Compl. ¶ 98, ECF No. 18; Opp'n 7–8, ECF No. 23.)  If that scenario proves true, then the alter ego claim has no basis. Therefore, Springfield's allegations do not state a plausible claim for alter ego liability against Ms. Lilley.  Discovery on the existing claims may turn up more evidence tending to support or disprove alter ego liability.  If Springfield develops a basis for its claim it may seek subsequent amendment.

### 6.  Punitive Damages

Because the Court finds Springfield pleads several plausible claims for relief in its Amended Complaint, those claims support Springfield's claim for punitive damages, and the claim remains properly pled.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Ms. Lilley's Motion to Dismiss as to Springfield's alter ego claim without prejudice and DENIES Ms. Lilley's Motion as to the remaining causes of action.

DATED this 11th day of August 2016.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge